UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| LAURA M. TROTH, | : | Case No. 3:11-cv-272 |
| | : | |
| Plaintiff, | : | Judge Timothy S. Black |
| | : | |
| vs. | : | |
| | : | |
| COMMISSIONER OF | : | |
| SOCIAL SECURITY, | : | |
| | : | |
| Defendant. | : | |

**ORDER THAT: (1) THE ALJ'S NON-DISABILITY FINDING IS SUPPORTED BY SUBSTANTIAL EVIDENCE, AND AFFIRMED; AND (2) THIS CASE IS CLOSED**

This is a Social Security disability benefits appeal. At issue is whether the administrative law judge ("ALJ") erred in finding the Plaintiff "not disabled" and therefore unentitled to disability insurance benefits ("DIB"). (*See* Administrative Transcript ("Tr.") (Tr. 11-17) (ALJ's decision)).

**I.**

Plaintiff filed an application for disability insurance benefits on October 20, 2006, alleging an onset date of December 6, 2004. (Tr. 9). Plaintiff alleged disability due to leg, hip, and back pain. (Tr. 13-14). Plaintiff's claim was denied initially and upon reconsideration. (Tr. 9). An ALJ held a hearing in 2010 at which Plaintiff (who was represented by counsel) and a vocational expert testified. (Tr. 29-44). The ALJ issued a decision later that year, in which he found that Plaintiff had the residual functional

capacity ("RFC")[1] to perform a reduced range of light work, including jobs that existed in significant numbers in the national economy, and that Plaintiff was therefore neither disabled nor entitled to DIB. (Tr. 11-17).

Plaintiff is 42 years old and she has at least a high school education.[2] (*Id.*) Plaintiff worked in the past as a case worker, social service aide, and case supervisor. (Tr. 17).

The ALJ's "Findings," which represent the rationale of his decision, were as follows:

1.  The claimant last met the insured status requirements of the Social Security Act on March 31, 2008.

2.  The claimant did not engage in substantial gainful activity during the period from her alleged onset date of December 6, 2004 through her date last insured of March 31, 2008 (20 CFR 404.1571 *et seq.*).

3.  Through the date last insured, the claimant had the following severe impairments: degenerative joint disease of both knees with the residual effects of arthroscopic surgeries (20 CFR 404.1520(c)).

4.  Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

---

[1] The Agency defines RFC as "the most you can still do despite your limitations." 20 C.F.R. § 404.1545(a)(1).

[2] While the Court was unable to find any record of Plaintiff's educational background, she does claim that she was a Licensed Social Worker ("LSW"), which requires at least a master's degree in social work.

5.  After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b) subject to the following limitations: occasional climbing of ramps and stairs; no climbing of ropes, ladders, or scaffolds; occasional balancing, stooping, and crouching; no kneeling or crawling, and; no exposure to hazards, including unprotected heights.

6.  Through the date last insured, the claimant was capable of performing past relevant work as a case worker, social service aide, and case supervisor. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7.  The claimant was not under a disability, as defined in the Social Security Act, at any time from December 6, 2004, the alleged onset date, through March 31, 2008, the date last insured (20 CFR 404.1520(f)).

(Tr. 13-17).

In sum, the ALJ concluded that Plaintiff was not under a disability as defined by the Social Security Regulations and was therefore not entitled to DIB. (Tr. 17).

*Pro se* Plaintiff does not identify any particular error in the ALJ's decision.[3] Instead, Plaintiff asserts that she has various limitations and submits over 80 pages of additional medical records which were not before the ALJ at the time of his decision. Because Plaintiff is proceeding *pro se*, the Court has carefully reviewed the ALJ's

---

[3] Although *pro se* plaintiffs enjoy the benefit of a liberal construction of their pleadings and filings, *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999), this Court is not required to make a *pro se* plaintiff's arguments for her. Such a mandate would "require the courts to explore exhaustively all potential claims of a *pro se* plaintiff, . . . [and] would . . . transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Crawford v. Crestar Foods*, No. 98-3144, 2000 U.S. App. LEXIS 6695, at *2 (6th Cir. Apr. 6, 2000).

decision to determine whether his critical findings of fact were made in compliance with the applicable law and whether substantial evidence supports those findings.

## II.

The Court's inquiry on appeal is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). In performing this review, the Court considers the record as a whole. *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled. As the Sixth Circuit has explained:

> "The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm."

*Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

The claimant bears the ultimate burden to prove by sufficient evidence that she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). That is, she must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

**A.**

The record reflects that:

**2005**

Plaintiff saw primary care physician Dr. May from January through December with various complaints, including bilateral knee pain. (Tr. 209-18). Right knee imaging in January was negative. (Tr. 214).

Plaintiff saw an orthopedic surgeon, Dr. Duffey, in August for right knee pain; she complained of "difficulty with sitting on long plane rides."[4] (Tr. 180-81). Dr. Duffy found grinding and crepitus,[5] but no swelling or instability. (Tr. 180-81). He took x-rays which showed "mild" joint changes, and he reviewed a July MRI showing "small" swelling and degenerative changes. (Tr. 181, 186-87). He diagnosed a right knee contusion, sprain, and strain. (Tr. 181).

In September, Dr. Duffey suspected RSD-type[6] phenomenon and recommended a bone scan. (Tr. 179). Dr. Duffey was unimpressed with the results of the bone scan, recommended physical therapy and bracing, and discharged Plaintiff from his care. (Tr.

---

[4] Plaintiff alleges that she has not been on a plane since approximately 1995, and believes that Dr. Duffy was referring to her difficulty sitting in a car for long distances. (Doc. 13 at 3).

[5] Cepitus is medical term used to describe the grating, crackling, or popping sounds and sensations experienced under the skin and joints.

[6] Reflex Sympathetic Dystrophy ("RSD") Syndrome is a term used to describe a nerve disorder characterized by chronic severe burning pain, pathological changes in bone and skin, excessive sweating, tissue welling, and extreme sensitivity to touch.

177, 183). He noted that Plaintiff "needs to increase her strength and work through this." (Tr. 177).

**2006**

Plaintiff saw Dr. May from January through December, alleging knee, hip and back pain. (Tr. 197-208). Left knee imaging was negative. (Tr. 203).

Plaintiff saw a pain care specialist, Dr. Lingam, in April for knee pain; he examined Plaintiff and reviewed the 2005 MRI report and Dr. Duffey's records. (Tr. 251-52). Dr. Lingam diagnosed Plaintiff with right knee sprain, right lateral meniscal tear, and left knee contusion. (Tr. 252). He noted objective and subjective indications "consistent with" RSD and recommended diagnostic injections. (Tr. 252). He also prescribed medication. (Tr. 252).

A left knee MRI in May showed mild degenerative joint disease. (Tr. 184).

In June, Dr. Lingam noted that the injections indicated RSD/complex regional pain syndrome ("CRPS")[7] in Plaintiff's right leg. (Tr. 242).

**2007**

Plaintiff saw Dr. May from January through May; he opined that Plaintiff had RSD and irritated knee cartilage. (Tr. 193-96). Plaintiff also saw Dr. Lingam from January through July. (Tr. 219-26).

In January, a state agency reviewing physician, Dr. Gahman, opined that Plaintiff

---

[7] CRPS is a chronic pain condition that can affect any area of the body, but often affects an arm or a leg.

could do light work; stand/walk for 30 minutes at a time and for four hours out of eight; occasional use of foot controls and no work around heights. (Tr. 192).

In April, Dr. May indicated that he had reviewed records dating back to 1999 and opined that Plaintiff had irritated cartilage in her right knee. (Tr. 194). He also opined that Plaintiff had RSD in her right leg, and irritated cartilage in her left knee. (Tr. 195).

In August, a state agency physician, Dr. Vasiloff, affirmed Dr. Gahman's opinion. (Tr. 253).

**2008 (post-date last insured)[8]**

Plaintiff saw a chiropractor, Dr. Cooper, in May and June; he consistently noted that she responded "favorably" to treatment. (Tr. 409-25). A lower back x-ray in May showed decreased disc space at one level. (Tr. 412).[9]

A rheumatologist, Dr. Whistler, examined Plaintiff in July and indicated that he "really [did] not know about the RSD diagnosis [that Plaintiff reported]" because he could not "really find characteristics" or "features that allow me to make that diagnosis." (Tr. 395). His impression was that Plaintiff had "mysofascial pain,[10] fibro-type symptoms with bursitis and tendonitis." (Tr. 395).

---

[8] Plaintiff's date last insured was March 31, 2008. (Tr. 11).

[9] Plaintiff alleges that the last treatment she received from Dr. Cooper caused so much pain that she was unable to walk for several weeks. (Doc. 13 at 3).

[10] Mysofascial pain is a syndrome characterized by chronic pain caused by multiple trigger points. Among the symptoms are referred pain, limited range of motion, and sleep disturbance.

A July x-ray of Plaintiff's hips showed impingement on both sides and degenerative changes in the sacroilliac joints.[11] (Tr. 399). Knee x-rays showed arthritic changes in the right but no significant joint space narrowing in the left. (Tr. 401).

Plaintiff saw a pain management specialist, Dr. Sparks, in September for leg pain. (Tr. 330-32). Dr. Sparks indicated that Plaintiff did not have CRPS and recommended a neurological consult and a chronic pain rehabilitation program. (Tr. 332).

In November, neurologist Dr. Saha examined Plaintiff. (Tr. 314-15). He noted a normal gait and diagnosed migraines and peripheral neuropathy, and questioned the reported diagnosis of RSD. (Tr. 315). He recommended further investigation and prescribed medication. (Tr. 315). Later that month, Dr. Saha conditionally attributed Plaintiff's headaches to analgesic abuse[12] and diagnosed degenerative arthritis in her neck, citing to an MRI that showed disc bulging at one level with no cord impingement; he again noted normal gait. (Tr. 312). In December, he found full strength and normal gait, and added the diagnosis of restless leg syndrome. (Tr. 311).

**2009 (post-date last insured)**

In January, Dr. Saha again noted normal gait. (Tr. 309).

Plaintiff saw neurologist Dr. Jones in April. (Tr. 276). He disagreed with the

---

[11] The sacroilliac joint is a joint in the bony pelvis between the sacrum and the ilium of the pelvis. The sacrum supports the spine.

[12] Analgesic abuse is injury to the kidney caused by analgesic medications such as aspirin, phenacetin, and paracetamol. The term usually refers to damage induced by excessive use of combinations of these medication, especially combinations that include phenacetin.

diagnosis of RSD and opined that Plaintiff had restless leg syndrome[13] and stiff person syndrome,[14] recommended further testing and prescribed medication. (Tr. 276). In June, he found good response to medication (Tr. 273), and suggested that testing did not support the diagnosis of stiff person syndrome (Tr. 261).

A whole body bone scan in July was negative. (Tr. 256). In August, Dr. Jones diagnosed fibromyalgia; he noted a mildly antalgic gait and moderate restlessness, and Plaintiff's reports of playing a "dance game" with her children, and "resistance training on a home gym." (Tr. 254).

**B.**

The crux of Plaintiff's argument is that she is limited by her impairments to a disabling degree. In particular, she references leg, hip, and back pain; lack of mobility in her knees and hips; and use of a cane. However, a review of the record, the ALJ's decision, and the legal authority, shows that the ALJ committed no error in evaluating Plaintiff's claim of disability.

The ALJ agreed that Plaintiff had severe and non-severe impairments including knee problems and a back condition, and, therefore, limited Plaintiff to a reduced range of light work. (Tr. 13-14). In reaching this conclusion, the ALJ reviewed the objective medical evidence during the time period at issue. (Tr. 11-17). For example, the ALJ

---

[13] Restless leg syndrome is a neurological disorder characterized by an irresistible urge to move one's body to stop uncomfortable or odd sensations.

[14] Stiff person syndrome is a rare neurological disorder characterized by progressive rigidity and stiffness that is superimposed by spasms, resulting in postural deformities.

cited to diagnostic imaging of Plaintiff's knees showing minimal or mild abnormalities (Tr. 13, 16), such as the July 2005 MRI (Tr. 186-87); a May 2006 MRI (Tr. 184); and a July 2009 bone scan (Tr. 356). The ALJ also cited to a neck MRI showing degenerative disc disease. (Tr. 14, 364). None of this evidence undermines the ALJ's RFC determination.

Additionally, the ALJ considered the reports and opinions of Plaintiff's various examining and treating physicians. He noted the dispute between the medical professionals about Plaintiff's diagnoses (Tr. 16), and Plaintiff has not shown that his decision to credit the conclusion of Drs. Saha and Sparks that Plaintiff did not have RSD/CRPS. over the contrary reports of Drs. May and Lingham, was in any way unreasonable. *See Bender v. Comm'r of Soc. Sec.*, 2011 WL 3812665 (S.D. Ohio Aug. 29, 2011) (the ALJ and not the court is responsible for resolving conflicts between medical evidence). More importantly, the ALJ considered the medical evidence of Plaintiff's limitations apart from her diagnoses. (Tr. 16-17). He noted that Dr. Sparks could not explain Plaintiff's pain symptoms. (Tr. 332). The ALJ considered that there were "few actual physical findings." (Tr. 16). Notably, Dr. Saha repeatedly found normal strength and normal gait (Tr. 311-12, 315), and Dr. Whister documented a largely normal physical examination (Tr. 394-95).

The ALJ also considered other evidence undermining Plaintiff's allegations. In fact, the ALJ referenced the specific page of Dr. Sparks's report that documented inconsistent responses by Plaintiff in contradiction of her allegations that her skin was

painful to the touch. (Tr. 16, 332). Similarly, Dr. Jones documented that Plaintiff acted inconsistently as to her pain complaints with him. (Tr. 277). The ALJ further noted that Plaintiff reported that she played a dance game with her children and did strength training on her home gym.[15] (Tr. 16, 254).

Finally, the ALJ noted that no treating physician had opined that Plaintiff was disabled. (Tr. 17). Moreover, no treating or examining physician opined that Plaintiff had *any* limitations. The only limitations came from the state agency reviewing physicians. (Tr. 19, 253). While these physicians found Plaintiff to be slightly more limited in the functions of standing and walking than the ALJ did, the ALJ nonetheless incorporated their more-restrictive limitations in his questioning of the VE, who explained that those limitations permitted Plaintiff to perform two of her past jobs.[16] (Tr. 42-43).

In sum, no objective medical or medical opinion evidence undermines the ALJ's conclusion that Plaintiff was not disabled during the period at issue. *See Shelby v. Astrue*, 2011 WL 3321303 (S.D. Ohio May 12, 2011) (Litkovitz, M.J.) ("the issue is not whether the record could support a finding of disability, but rather whether the ALJ's decision is supported by substantial evidence") (citing *Casey v. Sec'y of Health & Human Servs.*, 987

---

[15] Plaintiff claims that she participated in the activities in response to her doctor's advice to lose weight. (Doc. 13 at 3). She claims that she was unable to continue these activities due to pain. (*Id.*)

[16] Plaintiff claims that she could not be a social worker because it was too painful for her to drive. (Doc. 13 at 3).

F.2d 1230 (6th Cir. 1993)).

## C.

A reviewing court may remand a case for consideration of additional evidence submitted to the court if the party seeking remand proves that the additional evidence is new and material, and that he or she had good cause for his or her failure to incorporate the additional evidence into the record during the administrative hearing. 42 U.S.C. § 205(g). Here, Plaintiff offers: (1) records from 2009 relating to her treatment by Dr. Jones, which is duplicate evidence already in the record; and (2) records from Dr. Jones from 2010-2012, including an opinion from 2012.

Sentence six of Section 4-5(g) provides that the Court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." Thus, Section 405(g) imposes three requirements for a sentence six remand: (1) the evidence must be new; (2) the evidence must be material; and (3) the plaintiff must show good cause exists for her failure to include the evidence in the prior proceeding. *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 549 (6th Cir. 2002).

While the evidence from 2010-2012 is new, Plaintiff has not established that good cause exists for failing to have submitted the evidence to the ALJ. The good cause requirement is satisfied if there is a "valid reason" for the failure to submit evidence at a prior hearing. *Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir.

-12-

1986). For example, Dr. Jones first saw Plaintiff in 2009 (Tr. 276), and there is no explanation for why he could not have submitted an opinion until three years had passed.[17] Moreover, the Sixth Circuit has rejected the argument that good cause exists because the post-hearing evidence did not exist prior to the hearing. *Id.* at 966 ("this circuit has taken a harder line on the good cause test" than simply relying on the age of the evidence").

To the extent that Plaintiff contends that the additional evidence shows that her condition worsened, and that she suffered new impairments since December 31, 2005, such evidence is not relevant to this case. *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 712 (6th Cir. 1988). Indeed, "[reviewing] courts have declined to remand disability claims for reevaluation in light of medical evidence of a deteriorated condition," as such evidence is more appropriately brought before the Social Security Administration as a new claim for disability benefits. *Id.*

Here, Plaintiff has failed to satisfy her burden of showing that the requirements for a sentence six remand are satisfied. First, many of the documents that Plaintiff submitted were already in the record and are thus cumulative. Second, the additional evidence is not material because there is not a "reasonable probability that the Secretary would have reached a different disposition of [plaintiff's] disability claim if presented with the new evidence." *Sizemore*, 865 F.2d at 711. The medical records Plaintiff submitted include

---

[17] Dr. Jones did in fact provide an opinion in 2010, after the ALJ issued his decision. (Tr. 440). While Plaintiff (through her then-counsel) submitted it to the Appeals Council (Tr. 7), she does not now reference it as part of her sentence six argument.

-13-

no new objective findings concerning Plaintiff's back impairment, or any other physical impairment, so as to likely alter the ALJ's previous determination concerning her RFC.

The new evidence consists mostly of treatment notes, a conclusory 2012 opinion, and lab results. All of this evidence is from 2010, at the earliest, and none of it concerns Plaintiff's condition as of March 2008. In fact, many of the treatment notes, as well as Dr. Jones's 2012 opinion, address a diagnosis of fibromyalgia that did not appear in the record until 2009, almost a year after Plaintiff's date last insured. There was no mention of fibromyalgia at any point during the time period at issue. Indeed, the first arguable hint of fibromyalgia arose in July 2008 – months after Plaintiff's date last insured – when examiner Dr. Whistler indicated that Plaintiff had "mysofascial pain, fibro-type symptoms." (Tr. 395).

Similarly, Plaintiff has not shown that the new evidence would have created a "reasonable probability" that the Secretary would have reached a different conclusion on the issue of disability. *Sizemore*, 865 F.2d at 711. All of the new evidence post-dates Plaintiff's date last-insured and makes neither an explicit nor implicit relation back to the time-period at issue. The new treatment notes document mostly Plaintiff's subjective complaints and little objective evidence of limitations. In fact, even the diagnosis of fibromyalgia is inconsistently documented in Dr. Jones's notes; on several visits, Dr. Jones did not diagnose fibromyalgia (Tr. 474, 482, 488, 490), in contrast to his representation in his opinion that Plaintiff met the criteria for fibromyalgia (Tr. 472). Certainly, there is no indication that he ever found any specific trigger points or

documented any limitations due to any of Plaintiff's impairments. This severely undermines his 2012 opinion, which indicates that Plaintiff is "disabled" and that she cannot sit for more than ten minutes. (Tr. 472). *See Freudenberger v. Astrue*, 2011 WL 1114407 (S.D. Ohio Feb. 28, 2011) (Bowman, M.J.) ("where conclusions regarding a claimant's functional capacity are not substantiated by objective evidence, the ALJ is not required to credit those conclusions"). Dr. Jones provided no support or explanation for his limitation, and his treatment notes do not contain any information of the type found by courts to be critical to supporting an opinion of limitations based on fibromyalgia.[18] Therefore, Plaintiff has failed to carry her burden of showing that a remand under section 405(g) of the Act is warranted. *Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551, 553-54 (6th Cir. 1984).

**III.**

For the foregoing reasons, Plaintiff's assignments of error are unavailing. The ALJ's decision is supported by substantial evidence and is affirmed.

---

[18] Compare *Preston v. Sec'y of HHS*, 854 F.2d 815 (6th Cir. 1988) (Sixth Circuit noted that the claimant's treating physician "ha[d] done all that can be medically done to diagnose fibrositis and to support his opinion of disability," including testifying that the plaintiff represented "one of the worst cases of fibrositis he ha[d] seen"); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007) (finding it significant that the claimant's treating physicians documented consistent findings, the elimination of other diagnoses and a progressive worsening of the claimant's condition) with *Vance v. Comm'r of Soc. Sec.*, 2008 WL 162942, *4 (6th Cir. Jan. 15, 2008) ("a diagnosis of fibromyalgia does not automatically entitle [a claimant] to disability benefits" . . . "unlike in Rogers where claimant's fibromyalgia symptoms progressively worsened, [the present claimant's] symptoms have either improved or remained stable").

**IT IS THEREFORE ORDERED THAT** the decision of the Commissioner, that Laura Troth was not entitled to disability insurance benefits, is found to be **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and it is **AFFIRMED**; and, as no further matters remain pending for the Court's review, this case is **CLOSED.**

Date:  4/9/12                                                                                 *s/ Timothy S. Black*
                                                                                                       Timothy S. Black
                                                                                                       United States District Judge